UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
DENISE WIGGINS,
                             Plaintiff,       :

                  -against-         :       **REPORT AND RECOMMENDATION**

                                    :       15-CV-2895 (VSB) (KNF)
COMMISSIONER OF SOCIAL SECURITY,
                                    :
                      Defendant.
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

      Denise Wiggins ("Wiggins") commenced this action against the Commissioner of Social

Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision,

dated January 6, 2015, finding her ineligible for disability insurance benefits, pursuant to Title II

of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental Security Income benefits,

pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. Before the Court are

the parties' respective motions for judgment on the pleadings, pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.

## ALJ'S DECISION

      Wiggins alleged disability beginning on April 22, 2010. An administrative hearing was

held, on January 15, 2014, at which Wiggins testified, and was represented by counsel. Post-

hearing interrogatory responses were completed by a vocational expert. The issue before the

ALJ was whether Wiggins is disabled. The ALJ determined that Wiggins: (1) meets the insured

status requirements of the Social Security Act through March 31, 2015; (2) has not engaged in

substantial gainful activity since April 22, 2010; (3) has the following severe impairments: learning disorder, depression and generalized anxiety disorder; (4) does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: she "is limited to simple routine and rote tasks because of cognitive problems," "[b]ecause of some mental problems" Wiggins should not have tasks in which she works with the public or in tandem with coworkers, Wiggins is able to perform tasks at a flexible pace but not at a constant pace; however, she is expected to complete normal work production standards and she would need to receive instructions orally "because of problems reading and writing"; (6) is unable to perform any past relevant work; (7) was 27 years old; and (8) has the equivalent of a marginal education and is able to communicate in English. The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Wiggins is not disabled, regardless of whether Wiggins has transferable job skills. Considering Wiggins's age, education, work experience and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Wiggins can perform. The ALJ concluded that Wiggins has not been disabled from April 22, 2010, through the date of the ALJ's decision, January 6, 2015.

In considering the severity of Wiggins's mental impairments, the ALJ determined that Wiggins has mild restrictions in activities of daily living, as she can take care of her personal needs independently, engage in general cleaning, do laundry and shop, take public transportation independently and walk around outside. The ALJ found that Wiggins has moderate difficulty in social functioning and with regard to concentration, persistence or pace. Although Wiggins had

an individual education program in school, no evidence exists of adaptive functioning limitations prior to age 22 or at the time of the decision, since she is able to live independently, take care of her personal needs independently, cook, take public transportation on her own and she has worked at substantial gainful employment levels.

Concerning medical evidence, the ALJ gave significant weight to the opinion of Dr. Zelimir Vukasin ("Dr. Vukasin"), a psychiatrist, because it was consistent with the record as a whole, supported by the findings of Dr. Melissa Malakoff ("Dr. Malakoff"), a psychologist consultative examiner, and Dr. Vukasin treated Wiggins on a regular basis since 2012. However, Dr. Vukasin's opinion that Wiggins was not able to work for 12 months was not given significant weight because it is a vocational, not a medical opinion. The ALJ gave some weight to the opinions of Dr. Malakoff and Dr. Loretta Greenidge-Patton, an Intake-Phase 1 Doctor for an entity named Narco-Freedom. The ALJ found, based on Wiggins's testimony and the record, that Wiggins could have headaches and anxiety, but not to such an extent to prevent her from working. The vocational expert responded to the interrogatories, listing cleaner-housekeeper, laundry worker and marker, as jobs that exist in significant numbers in the national economy that Wiggins would be able to perform.

**DEFENDANT'S CONTENTIONS**

The defendant contends that substantial evidence supports the ALJ's decision, including the finding that Wiggins did not exhibit qualifying deficits in adaptive functioning, notwithstanding her intelligent quotient ("IQ") score of 70. The record before the ALJ contained substantial evidence of Wiggins's adequate level of adaptive functioning: she attended high school until the tenth grade, had extensive past work at substantial gainful activity levels, lived alone when she was employed and could support herself financially, was able to care for her

3

personal needs, prepare meals, do chores, pay bills, shop in stores and use public transportation independently.  Moreover, Wiggins testified that she was able to go outside alone, spent her days walking and visiting the library to watch videos, went to church, and Dr. Jeffrey Beck ("Dr. Beck"), a psychologist, noted that Wiggins demonstrated average social and verbal communication skills and strong self-care skills.

The defendant asserts that the Appeals Council found, properly, that the October 29, 2014 psychological evaluation by David Louick, Ph.D. ("Dr. Louick"), submitted as additional evidence by Wiggins to the Appeals Council, did not provide a basis for changing the ALJ's decision.  Dr. Louick concluded that Wiggins's intellectual and adaptive functioning deficits were consistent with mild intellectual disability, which was similar to Dr. Vukasin's assessment of Wiggins's mild to moderate cognitive functioning, Dr. Malakoff's findings of mild to moderate cognitive functioning and Wiggins's residual functional capacity for a range of unskilled work.  Moreover, Dr. Louick's finding that Wiggins had a full scale IQ of 63 was inconsistent with the score of 70 obtained by Dr. Beck, in 2010.  Although Dr. Louick's testing yielded an adaptive behavior composite score of 44, low with moderate deficits, he noted that the results should be considered with caution, as the test evaluated only Wiggins's self-reports, and the test results were much lower than he expected for someone of her intellectual capacity.  The defendant asserts that even assuming that the full scale IQ of 63 is valid, it cannot satisfy the adaptive function requirement set forth in the introductory paragraph of listing 12.05C.

The defendant contends that the ALJ's residual functional capacity determination is supported by substantial evidence, including: (a) Dr. Vukasin's opinion that Wiggins only had marked limitations in her ability to carry out complex instructions and make judgments on complex work-related decisions, but was otherwise mildly to moderately limited in other

itemized areas of work-related mental functioning; and (b) Dr. Malakoff's June 11, 2013

opinion, concluding that Wiggins was able to follow and understand simple directions and

instructions and perform simple tasks, independently.  Moreover, the ALJ considered properly

Wiggins's statements concerning her limitations and relied properly on the vocational expert's

testimony that jobs exist in the national economy that Wiggins can perform.

## PLAINTIFF'S CONTENTIONS

Wiggins contends that: (1) evidence submitted to the Appeals Council demonstrates that

she meets listing 12.05C; and (2) the vocational expert's testimony does not reflect the ALJ's

residual functional capacity findings.  According to Wiggins, the Appeals Council should have

granted review because Dr. Louick's October 29, 2014 evaluation shows that the results of

standardized testing supported a diagnosis of mild intellectual disability, which demonstrates

that, at step three of the sequential evaluation, Wiggins meets listing 12.05C.  Wiggins asserts

that Dr. Louick reported her full scale IQ of 63 on the WAIS-IV (Wechsler Adult Intelligence

Scale, Fourth Edition) with a confidence interval of 60-68 and noted inconsistency with the score

obtained in a previous evaluation, which "could be due to the 'more recently standardized

norms' reflected in the newer WAIS-IV."  Dr. Louick reported Wiggins's Adaptive Behavior

Composite standard score of 44 on the Vineland Adaptive Behavior Scales, Second Edition,

which was lower than expected based on her tested intellectual capacity on the WAIS-IV.  Dr.

Louick noted that, within the communication domain of adaptive functioning, Wiggins showed

severe deficits because she was unable to listen to a story for thirty minutes or follow three-part

instructions, she could not explain her ideas in more than one way, she could not read and write

at a sixth grade level and was unable to complete the mailing and return address on an envelope.

In the activities of daily living domain, Wiggins showed moderately low functioning and in

socialization, she scored low with severe deficits.  Wiggins contends that the ALJ's findings on adaptive functioning are contradicted by Dr. Louick's evaluation, and the ALJ was not qualified to undertake "a medical/psychological determination."  The ALJ failed to send Wiggins for a consultative examination to determine the level of her adaptive functioning, and Dr. Malakoff "specifically made this request in June 2013."  Moreover, the ALJ did not reconcile her finding of Wiggins's ability to live independently with her testimony that she lived in a supportive housing program with social worker support.  Wiggins contends that her attendance at a special education program in school is evidence of severe deficits in adaptive functioning and her employment as a nurse's assistant in a hospital "consisted of simply watching patients in a hospital to make sure they did not fall out of bed or pull out tubes."  Although Wiggins was paid at substantial and gainful levels, nothing in her job duties is inconsistent with a diagnosis of mild intellectual disability or suggestive of a level of functioning inconsistent with her claims. Wiggins asserts that her depression and anxiety impose additional and significant work-related limitations.

Wiggins contends that the ALJ determined that she could not read and write and would need to receive oral instructions on the job, finding her "functionally illiterate," but asked the vocational expert to assume a worker who possessed a marginal education.  However, the jobs of cleaner-housekeeper, laundry worker and marker, which the ALJ found Wiggins can perform based on the vocational expert's testimony, require reading and writing and are inconsistent with the ALJ's finding that Wiggins "could not read and write in the workplace."  The vocational expert reported that a housekeeper job would require a person to keep a "written record of the tasks completed in completion of cleaning hotel rooms," a "laundry worker would be expected to be able to read clothing labels for laundry instructions" and a marker "would be required to keep

a record of the number and type of articles marked" and "would be expected to compare printed

tickets with purchase orders for accuracy." Moreover, the Dictionary of Occupational Titles

indicates that the laundry worker job and the marker job are reasoning level two jobs, which

means that the individual is expected to read at a rate of 190 to 215 words per minute and to

write compound and complex sentences, using cursive style and proper end punctuation and

employ adjectives and adverbs. The housekeeping job is a reasoning level one job, requiring the

person to be able to read at a rate of 95 to 120 words per minute and to be able to write simple

sentences using subject, verb and object and series of numbers, names and addresses. The ALJ

failed to present Wiggins's limitations to the vocational expert, and she cannot perform the jobs

requiring reading and writing. Moreover, no foundation for an assumption exists that employers

would accommodate Wiggins by providing someone to read directions to her.

### DEFENDANT'S REPLY

The defendant contends that the ALJ's finding that Wiggins lacks the necessary adaptive

functioning per listing 12.05C is a legal, not medical question, and the ALJ relied on Dr.

Vukasin's treatment records and clinical findings and the opinions of Dr. Malakoff in making

that finding. The defendant asserts that, although Dr. Louick's evaluation is inconsistent with

aspects of the ALJ's decision and the extensive evidence of record, it does not make the ALJ's

decision "contrary to the weight of the evidence." The ALJ gave significant weight to Dr.

Vukasin's assessment of Wiggins and her limitations and Dr. Vukasin's assessments are

consistent with other evidence on the record. Thus, Dr. Louick's findings are insufficient to

"alter the weight of the evidence so dramatically as to require the Appeals Council to take the

case." The defendant contends that Dr. Malakoff recommended that Wiggins be given "an

intellectual assessment evaluation," which is "an issue separate from the level of adaptive

functioning she was assessing," and Dr. Malakoff's evaluation supports the ALJ's finding that Wiggins did not have the requisite deficit in adaptive functioning.  Moreover, Dr. Malakoff concluded that Wiggins's cognitive problems did not appear sufficiently significant to interfere with her ability to function on a daily basis.

The defendant asserts that the ALJ did not find that Wiggins was incapable of reading and writing for vocational purposes, and substantial evidence supports the ALJ's finding that she has a marginal education, generally considered as formal schooling at a 6th grade level or less, since Wiggins completed the ninth grade and Dr. Beck's testing showed her reading comprehension was at the 4th grade level and word recognition was at the 6.2 grade level. Wiggins received a certificate in school to be a certified nursing assistant and was able to maintain employment for years, manage her money, pay bills and use a computer.  Wiggins also completed forms in her own handwriting in connection with her disability application.  The defendant maintains that no inconsistency exists between the demands of the jobs the ALJ found Wiggins can perform and Wiggins's need for job instructions to be provided orally because the relevant job descriptions do not speak about how an employee is to receive job instructions.  The vocational expert accounted for Wiggins's cognitive limitations, explaining that the jobs of cleaner-housekeeper, laundry worker and marker required minimal reading and writing.

## PLAINTIFF'S REPLY

The plaintiff contends that the court should defer to the relevant expert opinion regarding deficit in adaptive functioning.  The ALJ found erroneously that Wiggins was living independently because at the time of the hearing, she was living in supportive housing, with social worker support in place.  According to Wiggins, having one area of relative strength in adaptive functioning does not defeat a claim of overall deficits in adaptive functioning and Dr.

8

Louick noted Wiggins's employment history but did not find it precluded a diagnosis of mild intellectual disability. Wiggins asserts that Dr. Vukasin reported that her intellectual functioning was at the mild retardation level and she would have moderate limitations in making simple work-related decisions, carrying out simple instructions and making judgments about simple work-related decisions, none of which is inconsistent with the diagnosis of mild intellectual disability under listing 12.05C.

Wiggins contends that the ALJ concluded that she "would need an accommodation on account of her limited literacy: she would be limited to jobs where instructions would be read to her"; yet, the vocational expert's testimony was premised upon a worker who could read and write at a marginal level. Since the vocational expert emphasized that the jobs she identified would require a worker to keep written records and be able to read written instructions, the ALJ was not permitted to rely on these jobs where the educational levels are in excess of Wiggins's educational level.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

9

"Failure to apply the correct legal standard constitutes reversible error, including, in certain

circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260,

265 (2d Cir. 2008) (internal citations omitted).

　　　To qualify for disability benefits, an individual must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), see 42

U.S.C. § 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step

process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security
> Administration] will not review the claim further. At the first step, the agency will find
> nondisability unless the claimant shows that he is not working at a "substantial gainful
> activity." At step two, the [Social Security Administration] will find nondisability unless
> the claimant shows that he has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the claimant's] physical or mental
> ability to do basic work activities." At step three, the agency determines whether the
> impairment which enabled the claimant to survive step two is on the list of impairments
> presumed severe enough to render one disabled; if so, the claimant qualifies. If the
> claimant's impairment is not on the list, the inquiry proceeds to step four, at which the
> [Social Security Administration] assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be disabled. If the claimant survives
> the fourth stage, the fifth, and final, step requires the [Social Security Administration] to
> consider so-called "vocational factors" (the claimant's age, education, and past work
> experience), and to determine whether the claimant is capable of performing other jobs
> existing in significant numbers in the national economy.

> Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations
> omitted).

"Although the claimant bears the general burden of proving that he is disabled under the statute,

'if the claimant shows that his impairment renders him unable to perform his past work, the

burden then shifts to the [Commissioner] to show there is other gainful work in the national

economy which the claimant could perform.'" Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir.

2002) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

The ALJ's decision is the Commissioner's final decision "if the request for review is

denied" by the Appeals Council.  20 C.F.R. §§ 404.981, 416.1481.  In this circuit, "new evidence

submitted to the Appeals Council following the ALJ's decision becomes part of the

administrative record for judicial review when the Appeals Council denies review of the ALJ's

decision."  Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).  The Social Security Act provides that,

on judicial review of the Commissioner's final decision, the court may at any time order

additional evidence to be taken before the Commissioner, but only if the plaintiff shows that: (1)

"there is new evidence which is material"; and (2) "there is good cause for the failure to

incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

## APPLICATION OF LEGAL STANDARD

### *The Vocational Expert Testimony*

The vocational expert testified via answers to interrogatories.  Vocational Interrogatory #

2 contained the following hypothetical question, under No.14:

> Assume a hypothetical individual who was born on May 12, 1982, has the
> equivalent of a **marginal education** and is able to communicate in English as
> defined in 20 CFR 404.1564 and 416.964.  Assume further that this individual has
> the residual functional capacity (RFC) to perform a full range of work at all exertion
> levels but with the following non-exertional limitations.  The individual is limited
> to simple routine and rote tasks.  She should not have tasks in which she works with
> the public or in tandem with co-workers.  She is able to perform tasks at a flexible
> pace but not at a constant pace but is expected to complete normal work production
> standards.  She would need to receive instructions orally.  Would such an individual
> be able to perform the occupations of cleaner housekeeper; laundry worker,
> domestic; marker? (Please answer yes or no and provide brief explanation)

The vocational expert answered: "Yes; an individual would be able to perform the occupation of

cleaner, housekeeper, laundry worker, domestic and marker with the above residual functional

capacity and above hypothetical." However, the ALJ's hypothetical omitted the following
language from the ALJ's finding on Wiggins's residual functional capacity: (1) "because of
cognitive problems" was omitted after "limited to simple routine and rote tasks"; (2) "[b]ecause
of some mental problems" was omitted before "[s]he should not have tasks in which she works
with the public or in tandem with co-workers"; and (3) "because of problems reading and
writing" was omitted after "[s]he would need to receive instructions orally." Although the
vocational expert testified that a cleaner, housekeeper "would be expected to maintain a written
record of tasks completed in the performance of cleaning hotel rooms," and "a person with a
marginal education would be able to complete such a written record," the vocational expert did
not testify based on the complete hypothetical, since the ALJ omitted including in the
hypothetical that the person "would need to receive instructions orally because of problems
reading and writing" and had "cognitive problems" and "some mental problems." The
vocational expert testified that the laundry worker, domestic, would have to be able to read
clothing labels for laundry instructions, but did not have an opportunity to reconcile that
requirement with the ALJ's finding, omitted from the hypothetical, that Wiggins had "problems
reading and writing," as well as "cognitive problems" and "some mental problems." The
vocational expert also testified that a marker with marginal education would have to be able to
keep a record of the number and types of articles marked, but did not have an opportunity to
consider the ALJ's omitted finding that Wiggins had "problems reading and writing" as well as
"cognitive problems" and "some mental problems." Since the jobs identified by the vocational
expert required the person performing them to read and write, the above omissions by the ALJ,
in particular the omission of the fact that Wiggins would need to receive instructions orally
"because of problems reading and writing," is material and makes the ALJ's hypothetical

incomplete; as a result, the vocational expert's response is not sufficient to support the ALJ's finding at step five of the sequential analysis. The Court finds that the ALJ did not meet her burden at step five of the sequential analysis.

***Dr. Louick's October 29, 2014 Evaluation***

The defendant argues that Dr. Louick's evaluation does not make the ALJ's decision contrary to the weight of the evidence. "Contrary to the weight of the evidence" is the standard governing the Appeals Council's evaluation of "the entire record, including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision," in which case the Appeals Council is directed "to review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b), 20 C.F.R. § 416.1470(b). However, judicial review of the final decision of the Commissioner is governed by 42 U.S.C. §405(g), which does not provide for a judicial determination of whether the new and material evidence submitted to the Appeals Council makes the ALJ's decision contrary to the weight of the evidence. Thus, it would be impermissible for the Court to consider whether Dr. Louick's October 29, 2014 evaluation makes the ALJ's decision contrary to the weight of the evidence.

Wiggins argues that the Appeals Council "should have granted review" because the October 29, 2014 evaluation establishes that she meets listing 12.05C. However, where the Appeals Council denies review, the ALJ's decision becomes the final decision which is reviewed pursuant to 42 U.S.C. §405(g). Since 42 U.S.C. §405(g) does not provide for a judicial determination of whether the Appeals Council's denial of review was appropriate, it would be impermissible for the Court to consider the propriety of the Appeals Council's denial of review in this circumstance.

The Appeals Council determined that the October 29, 2014 evaluation by Dr. Louick presented by Wiggins on appeal of the ALJ's decision was "new and material," 20 C.F.R. §§ 404.970(b), 416.1470(b), because it considered it when it denied the review and stated so explicitly in its decision.  Wiggins explained to the Appeals Council that the reason for not submitting the October 29, 2014 evaluation by Dr. Louick to the ALJ was that it was not available at the time of Wiggins's January 15, 2014 hearing.[1]  Dr. Louick's October 29, 2014 evaluation indicates, inter alia, that Wiggins's "[m]ental history is noteworthy for Major Depressive Disorder with a recent change in diagnosis to Schizophrenia (taking place in February 2014 by psychiatrist)."  The fact, not presented to the ALJ, that Wiggins was diagnosed with schizophrenia during the relevant time, in February 2014, shortly after her January 15, 2014 hearing before the ALJ, as indicated in Dr. Louick's October 29, 2014 evaluation, coupled with the prolonged time – almost one year – it took the ALJ to issue her decision, on January 6, 2015, in which the ALJ concluded that Wiggins was not under disability "through the date of this decision," is of grave concern to the Court because of the impact the October 29, 2014 evaluation may have had on the ALJ's decision.  Moreover, Dr. Louick's findings, at the time Wiggins received a new diagnosis, are new and material, but were not presented to the ALJ.  Since Dr. Louick's October 29, 2014 evaluation, referring to Wiggins's February 2014 change in diagnosis, was not available on January 15, 2014, to be presented to the ALJ, the Court finds that good cause existed for the plaintiff's failure to incorporate it in the record before the ALJ.

Having determined that good cause exists for Wiggins's failure to incorporate the new and material evidence into the record in the prior proceeding before the ALJ, 42 U.S.C. § 405(g), the Court finds that remand, based on the new and material evidence submitted for the first time

---

[1] The plaintiff's letter to the Appeals Council states, erroneously, that Wiggins's hearing before the ALJ was conducted on June 3, 2014.

14

to the Appeals Council, is warranted so that the ALJ can weigh the additional evidence in the first instance.

## RECOMMENDATION

For the foregoing reasons, I recommend that: (1) the plaintiff's motion, Docket Entry No. 36, be granted, the ALJ's decision be reversed and the matter remanded, pursuant to sentence four of 42 U.S.C. § 405(g); and (2) the defendant's motion, Docket Entry No. 26, be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, 40 Centre Street, Room 415, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Broderick. *Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York                Respectfully submitted,
      August 2, 2016

                                                 _Kevin Nathaniel Fox_
                                               KEVIN NATHANIEL FOX
                                               UNITED STATES MAGISTRATE JUDGE